**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**RUT FESSEHAZION,**

                **Plaintiff,**

      **- against -**

**HUDSON GROUP, et al.,**

                **Defendants.**

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/21/09
```

**OPINION & ORDER**

**08 Civ. 10665 (BSJ) (RLE)**

**RONALD L. ELLIS, United States Magistrate Judge:**

## I. INTRODUCTION

Pro se plaintiff Rut Fessehazion commenced this action on December 9, 2008, alleging discrimination in employment in violation of municipal law, New York State law, and Title VII of the Civil Rights Act of 1964. Pending before the Court are Fessehazion's applications for the appointment of counsel and for the provision of a native language interpreter to assist her during a status conference scheduled for August 27, 2009. For the reasons set forth below, Fessehazion's applications are **DENIED** without prejudice.

## II. BACKGROUND

Defendant Hudson Group operates a chain of retail convenience stores and newsstands under the name Hudson News. (Compl., Attach. No. 2 (Compl. to City of New York Comm'n on Human Rights) at ¶ 2.) In January 2004, Fessehazion began working as a cashier for Hudson News at its Pennsylvania Station store in New York City. (*Id.* at 5, Attach. No. 2 (Compl. to City of New York Comm'n on Human Rights) at ¶¶ 2, 9.) Fessehazion immigrated from Ethiopia to the United States, where she received asylum. (*Id.* at 5.) Her native language is Amharic, and she is not fluent in English. (Fesschazion's Letter to the Court, August 3, 2009 at 1.) Fessehazion

identifies herself as a Black, Christian female. (Compl. at 3.) She was discharged in May 2005,
and on October 17, 2005, she filed a complaint with the City of New York Commission on
Human Rights against Hudson Group, the Pennsylvania Station store manager, and various
assistant managers of that store. (*Id.* at 5, Attach. No. 2 (Compl. to City of New York Comm'n
on Human Rights) at ¶¶ 3-8.)

Fessehazion alleges that she was subjected to unequal terms and conditions in her
employment, and that she was terminated because of Defendants' unlawful discrimination
against her on the basis of her color, religion, gender, and national origin. In her Complaint,
Fessehazion incorporates by reference her complaint to the New York Commission on Human
Rights. (*Id.* at 3.) Fessehazion alleges that from January 2004 through May 2005, Defendant
Risvi – a female of Pakistani origin employed by Hudson Group as an assistant manager at its
Pennsylvania Station store – repeatedly asked Fessehazion where she was from, what religion she
practiced, and whether or not she was Muslim. (*Id.*, Attach. No. 2 (Compl. to City of New York
Comm'n on Human Rights) at ¶ 10.) She alleges that Defendants Nasser and Jokan demanded
she provide immigration documents and work permits, but did not demand such documents from
any other employees at the store, who were Pakistani immigrants. (*Id.* at ¶¶ 11-12.) Fessehazion
alleges that she provided valid documentation in response to these demands, but Jokan rejected
these documents and suspended her employment until her union interceded on her behalf. (*Id.* at
¶ 12.) She notes that Hudson Group, through its employees, conducted at least three spot
inspections of her cash register records, even though no other employees were subjected to
similar inspections during that time period. (*Id.* at ¶ 13.) Fessehazion alleges she requested a
schedule change, but Defendant Jokan refused the request – although he granted a change to a

2

Pakistani co-worker. (*Id.* at ¶ 14.) Finally, Fessehazion alleges that Defendant Khalid followed her into the storage area of the store and fondled her breasts against her will. She states that she immediately reported this to Defendant Iqbal, yet no disciplinary action was taken against Khalid. (*Id.* at ¶¶ 15-16.)

After investigation, the New York Commission on Human Rights found no probable cause to believe that the respondents to Fessehazion's complaint had engaged in the unlawful discriminatory practices she alleged. (*Id.*, Attach. No. 3 (New York Comm'n on Human Rights Determination and Order after Investigation) at 1.) On September 5, 2008, the U.S. Equal Employment Opportunity Commission adopted these findings and issued Fessehazion a Notice of Right to Sue letter. (*Id.*, Attach. No. 5 (U.S. Equal Employment Opportunity Comm'n Dismissal and Notice of Rights) at 1.)

On December 9, 2008, Fessehazion commenced the instant action, alleging discrimination in employment in violation of municipal law, New York State law, and Title VII of the Civil Rights Act of 1964. Her request to proceed *in forma pauperis* was granted on December 9, 2008. (Doc. No. 1.) Fessehazion filed an application for the appointment of counsel on July 1, 2009, indicating that her educational background and lack of fluency in English limit her ability to represent herself. (Doc. No. 15.) She notes that she has been unable to find an attorney because of her low income. (*Id.*) On August 3, 2009, Fessehazion requested that the Court provide her with an Amharic interpreter because she is not fluent in English, and because an interpreter would "allow [her] to more effectively communicate and represent [herself] before" the Court. (Fessehazion's Letter to the Court, August 3, 2009 at 1.)

3

## III. DISCUSSION

### A. Right to Interpretation

Generally, pro se civil litigants have no entitlement to an interpreter or translator. *See Pedraza v. Phoenix*, No. 93 Civ. 2631 (MGC), 1994 WL 177285 (S.D.N.Y. May 9, 1994); *DeSulma v. Correction Officer Goolsby*, 98 Civ. 2078 (RMB) (RLE), 1999 WL 147695 (S.D.N.Y. March 16, 1999). Although Fessehazion's proficiency in English may be limited, the Court's review of the record in this case indicates that her language difficulty has not prevented her from presenting and prosecuting her claims. Fessehazion has made no showing that she is confused or otherwise unable to understand or communicate with the Court; rather, her submissions clearly set forth her allegations of the facts giving rise to her claims and the relief that she seeks. Accordingly, Fessehazion's request for the provision of an interpreter is

### DENIED.

### B. Request for Counsel

Civil litigants, unlike criminal defendants, do not have a constitutional right to the appointment of counsel. However, under 28 U.S.C. § 1915(e)(1), "[t]he court may request an attorney to represent any person unable to afford counsel." In determining whether to appoint counsel for an indigent civil litigant, the Court considers numerous factors, and "exercises substantial 'discretion,' subject to the requirement that it be 'guided by sound legal principles.'" *Cooper v. A. Sargenti Co., Inc.*, 877 F.2d 170, 172 (2d Cir. 1989) (citing *Jenkins v. Chemical Bank*, 721 F.2d 876, 879 (2d Cir. 1983)). The Court's first inquiry is whether plaintiff can afford to obtain counsel. *See Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1341 (2d Cir. 1994). If the Court finds that a plaintiff cannot afford counsel, it must then examine the merits of the

4

case and "determine whether the indigent's position seems likely to be of substance." *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986). Once an initial determination has been made as to indigence and merit, the Court has discretion to consider the following factors: 1) the indigent's ability to investigate the crucial facts; 2) whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the factfinder; 3) the indigent's ability to present the case; 4) the complexity of the legal issues; and 5) any special reason why appointment of counsel would be more likely to lead to a just determination. *Id.* at 61-62.

Fessehazion satisfies the threshold requirement of indigence insofar as her *in forma pauperis* status establishes her inability to afford counsel. Based on the facts alleged in her Complaint, Fessehazion's claim might be sufficiently meritorious to satisfy the second threshold requirement. Currently, however, there is no reason to believe that the appointment of counsel would be more likely to lead to a just determination of Fessehazion's claims. Fessehazion has clearly stated the facts giving rise her claims, she has gathered evidence, and the legal issues involved in her claims appear relatively straightforward. As noted above, the fact that English is her second language has not demonstrably impaired Fessehazion's ability to pursue her case. Her correspondence to the Court has been clear and concise, indicating that she is able to understand English well enough to effectively litigate her claims. Therefore, Fessehazion's application is **DENIED** without prejudice.

5

## IV.  CONCLUSION

For the foregoing reasons, Fessehazion's applications for the appointment of counsel and

for the provision of native language interpreter are **DENIED** without prejudice.


**SO ORDERED this 21st day of August 2009
New York, New York**

**The Honorable Ronald L. Ellis
United States Magistrate Judge**

6